UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA JONES-EADES, O/B/O T.J.E., Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | No. CV-07-3079-CI ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 22, 26.) Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and directs an immediate award of benefits.

**JURISDICTION**

An application for Social Security Income ("SSI") benefits on behalf of a minor child was filed on July 16, 2003, alleging

disability began June 1, 2003.[1] (Tr. 64.) Benefits were denied initially and on reconsideration. (Tr. 58, 52, 47.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Peter Baum on October 23, 2006. (Tr. 653-63.) Plaintiff was represented by counsel. Plaintiff's mother, Barbara Jones-Eades, testified at the hearing. The ALJ denied benefits (Tr. 14-26) and the Appeals Council denied review. (Tr. 7.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

At the time of the hearing, Plaintiff was 12 years old and in the seventh grade. (Tr. 656.) She was doing work between the second and fourth grade levels, depending upon the subject. (Tr. 656-67.) Plaintiff's mother testified that Plaintiff has difficulties with sensory issues, sleep, anger, inappropriate behavior, focusing, maintaining concentration, relating to peers, completing homework, and expressing herself. (Tr. 657-60.) Plaintiff has liver irritation and severe stomachaches and eats things that are not meant to be eaten such as paper towels, fingernails, hair and toenails. (Tr. 661-62.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a

---

[1] A previous application for SSI benefits on behalf of a minor was filed on November 15, 2001, alleging disability beginning January 1, 1995. (Tr. 75.) Benefits were denied (Tr. 61) and Plaintiff did not appeal.

Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 105, which amended 42 U.S.C. § 1382c(a)(3). Under this law, a child under the age of eighteen is considered disabled for the purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c(a)(3)(C)(i)(2003).

The regulations provide a three-step process in determining whether a child is disabled. First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two. Step two requires the ALJ to determine whether the child's impairment or combination of impairments is severe. 20 C.F.R. § 416.924(c). The child will not be

found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that cause no more than minimal functional limitations." *Id.* If, however, there is a finding of severe impairment, the analysis proceeds to the final step, which requires the ALJ to determine whether the impairment or combination of impairments "meet, medically equal or functionally equal" the severity of a set of criteria for an impairment in the listings. 20 C.F.R. § 416.924(d).

The regulations provide that an impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas of functioning. 20 C.F.R. § 416.926a(a). To determine functional equivalence, the following six domains, or broad areas of functioning, are considered: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a.

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity at any time relevant to the decision. (Tr. 17.) At step two, the ALJ found Plaintiff has a severe combination of impairments including attention deficit hyperactivity disorder (ADHD) combined type, nocturnal enuresis, post traumatic stress disorder (PTSD), dysthymia, pica, and oppositional defiant disorder (ODD). (Tr. 17.) The ALJ then determined Plaintiff's recurrent abdominal pain and reflux symptoms resolved when her psychotropic medications were discontinued and

therefore concluded they are not severe impairments. (Tr. 17.) At the third step, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 18.) The ALJ also found Plaintiff does not have an impairment or combination of impairments that functionally equals the listings. (Tr. 18.) The ALJ found Plaintiff has a marked impairment in the domain of attending and completing tasks and less than marked impairments or no impairment in all other domains. (Tr. 20-26.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff alleges the ALJ erred by: (1) failing to give proper weight to her treating and examining physicians; and (2) determining that Plaintiff's combination of impairments does not functionally equal the listings. (Ct. Rec. 23 at 22, 24.) Defendant argues the ALJ properly considered the medical opinion evidence and substantial evidence supports the ALJ's finding that Plaintiff's impairments are not functionally equivalent to an impairment in the listings. (Ct. Rec. 27 at 3, 8.)

**DISCUSSION**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Tompkins, Plaintiff's treating physician. In an undated report received by the Office of Hearings & Appeals on September 13, 2006, Dr. Tompkins assessed no impairment in the domain of moving about and manipulating objects and marked impairments in the domains of acquiring and using information, attending and completing tasks, caring for yourself, and health and physical well-being. Dr. Tompkins

assessed an extreme impairment in the domain of interacting with and relating to others. (Tr. 575-77.) The ALJ gave little weight to Dr. Tompkins' opinion. (Tr. 19.) If the ALJ improperly rejected the opinion and Dr. Tompkins' report is credited, Plaintiff is disabled because the limitations assessed by Dr. Tompkins are functionally equivalent to a listed impairment.

The ALJ must consider the opinions of acceptable medical sources about the nature and severity of the Plaintiff's impairments and limitations. 20 C.F.R. §§ 404.1527, 416.927; S.S.R. 96-2p; S.S.R. 96-6p. A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

Here, Dr. Tompkins' opinion is contradicted by the nonexamining state consulting medical sources. The consulting physicians found

marked limitations in only one domain, attending and completing tasks, and assessed less than marked limitations or no limitations in all other domains.[2] (Tr. 419-24, 425-30, 524-29.) As such, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence to properly reject Dr. Tompkins' opinion.

The ALJ provided several reasons for rejecting Dr. Tompkins' opinion. First, the ALJ rejected Dr. Tompkins' opinion because Dr. Tompkins is not a mental health treatment provider and he had not reviewed Plaintiff's mental health records. (Tr. 19.) However, a treating physician's opinion on the mental status of his patient constitutes competent psychiatric evidence even though the physician is not a psychiatrist. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Dr.

---

[2]Plaintiff cites the September 2, 2004, case analysis prepared by Dr. Lewey, a state reviewing physician, in support of Dr. Tompkins' opinion. (Ct. Rec. 23 at 23, Tr. 329.) The ALJ's opinion did not address Dr. Lewey's analysis. Dr. Lewey states, "There is no indication or description of this [claimant] functioning well." (Tr. 329.) He also noted "this child seems quite impaired." (Tr. 329.) However, Dr. Lewey also indicated that most of the medical records available for his review were dated before the alleged onset date and he did not have current records from Plaintiff's pediatrician, psychologist or psychiatrist. (Tr. 329.) Dr. Lewey returned the claim so additional treating source evidence could be obtained. (Tr. 329.) Because Dr. Lewey's ultimate conclusion was that there was not enough information available to make a determination, Dr. Lewey's case analysis was given little weight.

Tompkins treated Plaintiff over a period of at least three years and had ample opportunity to observe her mental and physical status. (Tr. 433-87, 539-73.) As Defendant points out, although Dr. Tompkins mentioned he had not reviewed Plaintiff's mental health records, he also specifically noted his personal observations were the basis of his opinion that Plaintiff has an extreme limitation in the domain of interacting and relating to others. (Ct. Rec. 28 at 3, Tr. 576.) Thus, lack of mental health expertise is not a legitimate reason for rejecting Dr. Tompkins' opinion.

The second reason given for rejecting Dr. Tompkins' opinion is that Plaintiff stopped taking Wellbutrin and Tenex in April, 2005. (Tr. 546.) It is not clear how Plaintiff's discontinuance of Wellbutrin and Tenex bears on Dr. Tompkins' opinion about her limitations. While the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms as well is a relevant factor in evaluating the intensity and persistence of symptoms, 20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929(c)(3)(v), in this case, they are not particularly probative. First, Dr. Tompkins was not the prescribing physician, so the use or discontinuance of those medications does not reflect his opinion as to their appropriateness or effectiveness. Second, there is no evidence that Wellbutrin and Tenex were discontinued because the symptoms for which they were originally prescribed were reduced or eliminated. The notes of the prescribing psychiatrist, Dr. Petzinger, dated February 28, 2005, indicate that Plaintiff's mother felt Plaintiff was more suicidal after starting Wellbutrin, so she tapered and discontinued the medication. (Tr. 598.) Dr. Petzinger also indicated that

Plaintiff had a good response to the current dose of Seroquel, although she continued to have symptoms of oppositional defiance disorder. (Tr. 588.) On March 28, 2005, Dr. Petzinger noted Plaintiff's mother wanted to try discontinuing Tenex and Seroquel. (Tr. 601.) Dr. Petzinger recommended continuing the medications based on Plaintiff's "previously unstable presentations involving dangerous behavior." (Tr. 601.) Dr. Tompkins' April 2005 note about the medications says, "The psychiatrist changed meds. It made no real difference. So mother has stopped the tenex [sic] and Wellbutrin." (Tr. 546.) Thus, the discontinuance of Plaintiff's medications was not necessarily based on Plaintiff's improved symptoms or reduced limitations. As a result, the discontinuance of Plaintiff's medication has little bearing on the validity of Dr. Tompkins' opinion.

The ALJ went on to assert, "[E]ven in the period leading up to the discontinuance of her medications, her mental health treatment providers noted that she was doing well in school, although she was sent home frequently due to illness." (Tr. 19-20.) Plaintiff's mother reported Plaintiff "was doing well at school and adjusting to her male teacher," (Tr. 583) and had a "very good" report card. (Tr. 588.) While these are positive remarks, they do not indicate that Plaintiff no longer has serious problems. As noted by the ALJ, in November 2004, not long before Plaintiff's medications were discontinued, Plaintiff's fifth grade teacher reported Plaintiff had significant problems with attending and completing tasks and in her ability to acquire and use information. (Tr. 19, 279-87.) Significantly, Plaintiff's teacher also noted in November 2004, "It is obvious when she hasn't taken her medication." (Tr. 286.) Thus,

it is not a reasonable inference from the record that Plaintiff's problems at school were resolved.

Furthermore, in the months leading up to the discontinuance of her medication, Plaintiff continued to have other significant difficulties. In October 2004, Plaintiff's mother reported Plaintiff "was not doing well," was aggressive at times, and told her mother she wanted to die and that she thought she had special powers. (Tr. 580, 581.) At Children's Hospital in Seattle, Plaintiff cried during the exam, occasionally screamed, asked for her deceased cat, refused to be examined and attempted to run from the room. (Tr. 492.) It was also noted that her behavioral problems had become worse. (Tr. 489.) In November 2004, she did not get along with other children, stole from some, wet the bed at night, refused to see her psychiatrist and was described as angry, defiant and oppositional. (Tr. 588.) She had no friends at school, was teased by some boys, was defensive with other children and played by herself rather than risk opening up. (Tr. 590.) In December 2004, she made inappropriate comments at school, was oppositional, made a rude gesture to her psychiatrist and refused to see him at first. (Tr. 592.) Plaintiff's psychiatrist, Dr. Petzinger, said, "Results are mixed. Patient is manageable, but barely at times." (Tr. 592.) Her affect was variously described as blunted, flat or constricted and her mood was frequently described as sad, detached, or depressed during the end of 2004 and beginning of 2005. (Tr. 583, 586, 587, 590, 594, 595.) In March 2005, Plaintiff's mental health treatment goals continued to include reduction of anxiety and improving social skills. (Tr. 600.)

Dr. Petzinger did note in February 2005 Plaintiff was "[b]ehaviorally more stable" (Tr. 598), but it does not necessarily

follow from this statement that Dr. Tompkins' report is unsupported by the record. "More stable" is a relative phrase and only has meaning in the context of all of Dr. Petzinger's records. As Plaintiff points out, one month later, in March 2005, Dr. Petzinger assessed a GAF score of 48, indicating a serious level of impairment.[3] (Ct. Rec. 28 at 5, Tr. 601.) Thus, the records from the months leading up to the discontinuance of Plaintiff's medication are not substantial evidence supporting the rejection of Dr. Tompkins' opinion.

Lastly, as further justification for rejecting Dr. Tompkins' report, the ALJ cites an October 2006 school evaluation which "revealed that the claimant was generally performing well in school."[4] (Tr. 20, 321-24.) The evaluation was conducted to examine Plaintiff's eligibility for special education and individualized instruction and does not shed any light on Plaintiff's specific limitations in the various domains, particularly in the area of social functioning. (Tr. 321.) The ALJ also notes 2003 cognitive testing documenting an IQ of 81 and academic skills and fluency in the low average range. (Tr. 20, 159A.) The test results only underscore Plaintiff's difficulties, as Plaintiff's classroom performance was far behind her peers despite the results of the cognitive testing. (Tr. 161.) The 2006 evaluation and

---

[3]A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

[4]The 2006 evaluation states only that Plaintiff "continues to make academic progress" and is eligible for special services. (Tr. 322, 323.)

the 2003 test results are not inconsistent with and do not diminish the validity of Dr. Tompkins' opinion about Plaintiff's limitations. As Plaintiff suggests, it is possible for an individual to have certain strengths and abilities, yet also have serious, disabling problems. (Ct. Rec. 28 at 5.) Thus, it was not appropriate for the ALJ to reject Dr. Tompkins' assessment based on 2003 test results and the 2006 school report.

The ALJ did not provide specific, legitimate reasons supported by substantial evidence in the record for rejecting the report of the treating physician, Dr. Tompkins. As a result, the ALJ erred. When an ALJ improperly rejects the report of a treating physician, there are two remedies. The general rule, found in the *Lester* line of cases, is to "credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). When Dr. Tompkins' opinion is credited as a matter of law, it is clear that Plaintiff's limitations are functionally equivalent to a listed impairment and Plaintiff is disabled.

Accordingly, remand would only serve to delay the receipt of benefits.

**CONCLUSION**

The ALJ's reasons for rejecting the opinion of Plaintiff's treating physician are not based on substantial evidence and are not free of legal error. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 22)** is **GRANTED.** The matter is **remanded** for payment of an immediate award of benefits.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 26)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED.**

DATED January 23, 2009.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE